IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Luis Alejandro Tixi Tocachi, ) | Case No. : 1:26-cv-1139 |
| ) | |
| Petitioner, ) | **VERIFIED PETITION FOR WRIT** |
| v. ) | **HABEAS CORPUS** |
| ) | **AND COMPLAINT FOR** |
| ) | **INJUNCTIVE RELIEF** |
| TODD LYONS, field office director for U.S. ) | |
| Immigration and Customs Enforcement (ICE) ) | |
| in New York, Kristi Noem, Secretary of the ) | |
| Department of Homeland Security; ) | |
| Pamela Bondi, Attorney General, ) | Agency No.: A-220-377-975 |
| ) | |
| in their official capacities, ) | |
| Respondents. ) | |

**INTRODUCTION**

1.      Petitioner Luis Alejandro Tixi Tocachi, is a 24-year-old Ecuador national, who entered the United States without inspection as a minor of 17 years, through Texas, in July 25, 2021.

2.      This petition challenges Petitioner's civil immigration arrest and detention because ICE lacked statutory and regulatory authority to arrest him when it did, and because ICE deprived him of liberty without the minimum process required by the Fifth Amendment.

3.      Upon entering the United States, Petitioner relocated to Long Island, New York.

4.      Petitioner found work at La Union 7 in Long Island, NY.

1

5.    Although Petitioner was in removal proceedings, at his last hearing, for Special Immigrant Juvenile Status ("SIJS") his removal proceedings were concealed, as on April 21, 2023, he was granted special status of Petition for Amerasian, Widow(er), or Special Immigrant (I-360).  (Exhibit A).

6.    Petitioner has a valid employment authorization permit ("EAD"), valid from March 10, 2024, through April 21, 2027. (Exhibit B).

7.    Just yesterday, February 26, 2026, as Petitioner was purchasing food near his home in Long Island NY, **without warning or apparent justification,** ICE arrested Petitioner. Upon information and belief (Petitioner's sister), ICE did not explain to Petitioner why he as being arrested nor did they serve him with any documents, including a valid warrant or Notice to Appear ("NTA"), as required by 8 C.F.R. § 1236.1(b) (NTA), and 8 U.S.C. § 1226(a) (warrant).

8.    That sequence is unlawful. The regulation permits arrest under an I-200 warrant only "[a]t the time of issuance of the notice to appear, or at any time thereafter." 8 C.F.R. § 1236.1(b). In *Gopie v. Lyons*, No. 25-cv-05229-SJB (E.D.N.Y. Nov. 13, 2025), the Eastern District of New York granted habeas relief on this exact defect, holding that ICE lacks authority to arrest under Form I-200 where ICE issues the NTA only after the arrest.

9.    The INA provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Thus, "the issuance of a warrant is a 'necessary condition' to justify discretionary detention under the statute." Astudillo v. Hyde, No. 25 Civ. 551 (JJM), 2025 WL 3035083, at *4 (D.R.I. Oct. 30, 2025).

10.    Separately, Petitioner's detention violates due process because ICE failed to

2

conduct a prior or contemporaneous individualized custody determination before depriving him of liberty. Moreover, Petitioner's legal status has not changed from the time he entered the United States in July 25, 2021. *Gopie* held this defect independently warrants habeas relief and immediate release.

11.     As of this writing, upon information and belief, Petitioner is being held in ICE custody at a Correction Center in Central Islip NY (the ICE locator does not yet provide his location). ICE has taken the incorrect position that individuals like Petitioner are subject to mandatory detention under section 235(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b), and the Board of Immigration Appeals ("BIA") has adopted this reasoning, in a decision which is binding on all IJs.[1] As a result, Petitioner is not permitted to seek release on bond from an IJ.

12.     Although ICE has characterized Petitioner's detention as mandatory under § 1225(b), but that position is legally incorrect. **All** the District Courts of the Eastern District of New York ("EDNY"), **sided with the overwhelming majority of the National Districts Court cases (96.7%), that a non-citizen "already in the country" is governed by section 1226**. (*See Gopie v. Lyons*, No. 25-cv-05229-SJB (E.D.N.Y. Nov. 13, 2025)), (*See also, Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), Judge Choudhury held that § 1225(b)'s mandatory detention provisions apply only to noncitizens who are actually "seeking admission," not to individuals already residing in the United States. Reading § 1225(b) otherwise would render statutory language superfluous.).

13.     Pursuant to 28 U.S.C. § 2243, Mr. Luis Alejandro Tixi Tocachi, requests that the Court issue an Order to Show Cause directing ICE to file a return "within three days[,] unless for

---

[1] *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

good cause additional time, not exceeding twenty days, is allowed," justifying its unexplained decision to detain Petitioner, in apparent excess of statutory authority.

14.    Because ICE's actions violated Petitioner's right to due process, the Court should order his immediate release. Insofar as the Government maintains that Petitioner is detained under 8 U.S.C. § 1225(b), the Court should reject its novel interpretation of that statute and either order Petitioner's immediate release or, at the absolute minimum, direct Respondents to provide him with a bond hearing at which ICE must justify his continued detention.

## JURISDICTION

15.    This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq*.

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause).

17.    This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq*., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

18.    Venue is proper because—on information and belief—Petitioner is detained at a California Correction Center, in Central Islip, which is within the Eastern District of New York, which is under the jurisdiction of this Court.

## PARTIES

19.    Petitioner is an Ecuadoran national who has resided in the United States, since 25, 2021, for approximately 6 years.

4

20.    Petitioner was arrested while purchasing food near his home in Long Island NY, **without warning or apparent justification**. As of this writing, upon information and belief, Petitioner is being held by ICE at a Correction Center in Central Islip.

21.    Todd Lyons, is the Acting Director of ICE's New York Field Office. In his official capacity, he is charged with carrying out the functions of that office, including by making and overseeing decisions regarding immigration detention throughout the New York State, including Nassau and Suffolk County. He therefore has custody over Petitioner, in that he can order his release from ICE custody.

22.    Respondent Kristi Noem is the Secretary of DHS, which is ICE's parent agency. In her official capacity, she oversees and directs the activities of ICE, including its detention operations in  Conroe, Texas, and elsewhere. She therefore has constructive custody of Petitioner, in that she can direct ICE to release him from custody.

23.    Respondent Pamela Bondi is the Attorney General. In her official capacity, she is charged with making determinations as to removability, asylum eligibility, and immigration custody, all of which are binding on DHS and its components. She therefore has constructive custody of Petitioner, in that she has the capacity to compel ICE to release him.

## STATEMENT OF FACTS

24.    Petitioner Luis Alejandro Tixi Tocachi, an Ecuadoran national, crossed the southern land border into the United States through Texas, in July 25, 2021. Upon information and belief he has no criminal record. Petitioner resides in Long Island, NY.

25.    **Without warning or apparent justification,** yesterday, February 26, 2026, as Petitioner was purchasing food near his home in Long Island NY, ICE arrested Petitioner.

## LEGAL FRAMEWORK

26.     As the Supreme Court has repeatedly instructed, freedom "from government custody, detention, or other forms of physical restraint" is at "the heart" of what the Due Process Clause protects. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); see also *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

27.     This is particularly true in the context of civil detention. See, e.g., *Addington v. Texas,* 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Kansas v. Hendricks,* 521 U.S. 346, (1997) (requiring "strict procedural safeguards" to justify involuntary civil commitment of certain sex offenders); *Foucha,* 504 U.S. at 81-82, 86 (holding unconstitutional a state civil commitment "statute that place[d] the burden on the detainee to prove that he is not dangerous").

### A. Petitioner's Detention Violates **Procedural** Due Process Under the Fifth Amendment

28.     "[C]ivil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community.*" J.A.E.M. v. Wofford,* No. 25 Civ. 1380 (KES), 2025 WL 3013377, at \*3 (E.D. Cal. Oct. 27, 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Padilla v. ICE,* 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)). "A protected liberty interest may arise from a conditional release from physical restraint. Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Id.* (citation omitted) (citing *Young v. Harper*, 520 U.S. 143, 147–49 (1997)).

6

29.   "Due process 'is a flexible concept that varies with the particular situation.' The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors." Id. at *6 (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), which in turn cites 424 U.S. 319, 335 (1976)).

30.   To determine whether a civil detention violates a detainee's procedural due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976). *See Velasco Lopez v. Decker,* 978 F.3d 842, 851 (2d Cir. 2020) (applying Mathews test to a challenge involving discretionary noncitizen detention).

31.   Pursuant to Mathews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews,* 424 U.S. at 335.

32.   The first Mathews factor requires consideration of the private interest affected by Respondents' detention of Petitioner. This factor weighs heavily in Petitioner's favor because Mr. Luis Alejandro Tixi Toccata's interest in being free from physical detention is "the most elemental of liberty interests." *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004).

33.   As the court stated in *Carlos Javier Lopez Benitez v. Francis,* 25 civ. 5937 (DEH), "the most significant liberty interest there is—the interest in being free from imprisonment" (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2nd cir. 2020)).

34.     The second Mathews factor requires courts to assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks.

35.     The risk of erroneous deprivation here is extreme. ICE made no individualized custody determination before arresting Petitioner. No assessment of flight risk or dangerousness occurred contemporaneously with his detention, nor was Petitioner afforded notice or an opportunity to be heard prior to the deprivation of his liberty.

36.     In fact ICE has not conducted *any* process to Petitioner, not to mention to allow him notice and the right to be heard, before his freedom was taken from him.

37.     Courts have consistently held that § 1226(a) and its implementing regulations require such individualized determinations. See, e.g., *Carlos Javier Lopez Benitez v. Francis,* No. 25-cv-5937. ( "before the Government may exercise such discretion to detain a person, §1226(a) and its implementation regulations require ICE officials to make an individualized custody determination".) (quoting *Velesaca v. Wolf,* No. 20 Civ. 2153, 2020 WL 7973940 (2d cir. Oct. 13, 2020). (quotation marks and citation omitted)

38.     Regarding the value of additional safeguards, the court in *Carlos Javier Lopez Benitez v. Francis,* 25 civ. 5937 stated that "[a] person's liberty cannot be abridged without adequate procedural protections".

39.     Nor does the Government avoid constitutional scrutiny by characterizing Petitioner's custody challenge as intertwined with removal proceedings. Courts have recognized that habeas petitions challenging unlawful detention and the process leading to detention are not barred by the jurisdiction-stripping provisions of 8 U.S.C. § 1252(g) or § 1252(b)(9), because such

claims do not seek review of a final order of removal and do not arise from a discretionary decision to "commence proceedings."

40.     The third Mathews factor, the Government's interest, also weighs in favor of granting this petition. The Government's only legitimate interest at stake is its interest in ensuring that people facing removal do not endanger the public or abscond during the pendency of their removal cases. The Government's legitimate interests are not meaningfully burdened by requiring constitutionally adequate procedures—particularly where, as here, Petitioner was not in removal proceedings at the time of his arrest—thus he could not abscond during the pendency.

41.     Accordingly, Petitioner's detention violates procedural due process.

**B. Petitioner's Continued Detention Violates <u>Substantive</u> Due Process**

42.     The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Hernandez v. Sessions,* 872 F.3d 976, 990 (9th Cir. 2017) (quoting *Zadvydas,* 533 U.S. at 693). These due process rights are both substantive and procedural.

43.     In regard to substantive due process, the United States Supreme Court stated, "[t]he touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998).

44.     These protections extend to noncitizens facing detention, as "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). Accordingly, "[f]reedom from imprisonment—from

9

government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690.

45.    Substantive due process thus requires that all forms of civil detention—including immigration detention—bear a "reasonable relation" to a non-punitive purpose. *See Jackson v. Indiana,* 406 U.S. 715, 738 (1972).  The Supreme Court has recognized only two permissible non-punitive purposes for immigration detention: ensuring a noncitizen's appearance at immigration proceedings and preventing danger to the community. *Zadvydas,* 533 U.S. at 690–92; *see also Demore v. Kim,* 538 U.S. 510 at 519–20, 527–28, 31 (2003).

46.    Hence, to meet the strictures of due process, Mr. Luis Alejandro Tixi Tocachi's detention must "bear[] a reasonable relation to [the] purpose[s]" of civil immigration detention, which the Supreme Court has identified as mitigating flight risk and mitigating danger to the community. *See Zadvydas,* 533 U.S. at 690 (quoting *Jackson v. Indiana,* 406 U.S. 715 (1972)) (quotation marks omitted).

47.    Respondents will not be able to show that Petitioner's prolonged detention without bond, is necessary to prevent flight or to mitigate danger. As Petitioner was not in removal proceedings *at the time of his arrest*—thus he could not abscond during the pendency.

**C.  Petitioner Is Subject to 8 U.S.C. § 1226(a), Not Mandatory Detention Under § 1225(b).**

48.    The Government appears to take the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), even though Petitioner was "already in the country" at the time of his arrest.

49.    Beginning in May of this year, ICE has pursued an aggressive new enforcement campaign targeting people who are in removal proceedings at their homes, places of business, and even as they attended mandatory immigration court hearings or other immigration appointments.

Individuals have been arrested seemingly without regard to whether they have pending applications for asylum or other relief. This "coordinated operation" is "aimed at dramatically accelerating deportations."

50.    ICE's legal position is based on the Board of Immigration Appeals ("BIA") advanced novel interpretations of the immigration detention statutes. In *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), it held for the first time that individuals who were paroled into the United States years ago without ever being placed in expedited removal proceedings were subject to mandatory detention under 8 U.S.C. § 1225. Shortly thereafter, it expanded this mandatory detention holding to cover all persons present in the United States without admission, irrespective of their time and manner of entry. *See In the Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025).

51.    **However, such a position contradicts the ruling from the Supreme Court.** The United States Supreme Court has recognized that noncitizens "already in the country" are governed by § 1226(a). "8 U.S.C. § 1226(a)…provides for discretionary authority to detain other noncitizens who are '**already in the country**'". (emphasis added) *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).

52.    Similarly, Judge Edwards in Louisiana (among others), agreed that the Government's theory conflicts with its precedent, most notably with *Jennings v. Rodriguez*, 583 U.S. 281 (2018), as has explained:

> Petitioner is likely to succeed on the merits of his habeas claim. As an "alien already present in the United States," he is subject to Section 1226, not Section 1225, and is thus not subject to mandatory detention. *See Kostak v. Trump*, 2025 WL 2472136, at **2–3 (W.D. La., 2025) (holding that mandatory detention of aliens like Petitioner "under Section 1225 was erroneous..." and that they are instead subject to Section 1226); *see also Lopez Santos v. Noem*, 2025 WL 2642278, at **3–5 (W.D.La., 2025) (Doughty, C.J.) (holding same). What the BIA thinks of the matter, as expressed *In the Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), is of no moment, as it is principally *our* job to interpret statutes. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024). "And the Court respectfully

11

> disagrees with how the BIA reads §§ 1226(a) and 1225(b)(2)(A) in conjunction with one another." *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *6 (E.D.Mich., 2025). So does the Supreme Court. *See Jennings*, 583 U.S. at 297–303. And the Court is not going to say—effectively—that there is no difference between the two, when the Supreme Court has said that there is. *See id.* Plainly, "arriving" means "arriving," *see Pizarro Reyes*, 2025 WL 2609425, at *5 (discussing Section 1225), "already present" means "already present," *see Jennings*, 583 U.S. at 303 (discussing Section 1226), and there is no synonymy, nor ambiguity, between.

*Ventura Martinez v. Trump*, 25 Civ. 1445 (JE), 2025 WL 3124847, at *2 (Oct. 22, 2025) (W.D. La. Oct. 22, 2025) (emphasis in original).

53.      Moreover, the fundamental unfairness of  ICE's tactics has not escaped judicial notice. **Almost every court to weigh the constitutionality of ICE's notorious "hallway" arrests has found that they at least probably violated due process.** *See Hernandez v. Wofford*, No. 25 Civ. 986 (KES), 2025 WL 2420390 (E.D. Cal. Aug. 21, 2025) (granting temporary restraining order), 2025 WL 2624226 (E.D. Cal. Sep. 10, 2025) (preliminary injunction); *Cordero Pelico v. Kaiser*, No. 25 Civ. 7286 (EMC), 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Gonzalez v. Joyce*, No. 25 Civ. 8250 (AT), 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025); *Patel v. Almodovar*, No. 25 Civ. 15345 (SDW), 2025 WL 3012323 (D.N.J. Oct. 28, 2025); *Francois v. Wamsley*, No. 25 Civ. 2122 (RSM), 2025 WL 3063251 (W.D. Wash. Nov. 3, 2025); *Diallo v. Maldonado*, No. 25 Civ. 5740 (DG), 2025 WL 3158295 (E.D.N.Y. Nov. 12, 2025); *Orozco Acosta*, No. 25 Civ. 9601 (HSG), 2025 WL 3229097 (N.D. Cal. Nov. 19, 2025).

54.      Further, the Government's novel mass detention theory has received a chilly reception before our Nation's district courts. *See,* e.g., *Hyppolite v. Noem,* No. 25 Civ. 4304 (NRM), 2025 WL 2829511, at *12 (E.D.N.Y. Oct. 6, 2025) ("[S]ince Respondents began to broadly invoke § 1225(b)(2)(A) to justify the mandatory detention of noncitizens who already reside within the United States, well over a dozen federal courts around the country have rejected Respondents' novel and illogical interpretation of the INA." (citing Lopez Benitez, 2025 WL

2371588; *Mata Velasquez,* 2025 WL 1953796; Lepe v. Andrews, No. 25 Civ. 1163 (KES), 2025 WL 2716910 (E.D. Cal. Sep. 23, 2025); *Barrera v. Tindall,* No. 25 Civ. 541 (RGJ), 2025 WL 2690565 (W.D. Ky. Sep. 19, 2025); *Pablo Sequen v. Kaiser,* No. 25 Civ. 6487 (PCP), 2025 WL 2650637 (N.D. Cal. Sep. 16, 2025); *Pizarro Reyes v. Raycraft,* No. 25 Civ. 12546 (RJW), 2025 WL 2609425 (E.D. Mich. Sep. 9, 2025); *Doe v. Moniz,* No. 25 Civ. 12094 (IT), 2025 WL 2576819 (D. Mass. Sep. *5, 2025); Garcia v. Noem, No. 25 Civ. 2180 (DMS), 2025 WL 2549431 (S.D. Cal. Sep. 3, 2025); Lopez-Campos v. Raycraft,* No. 25 Civ. 12486 (BRM), 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Kostak v. Trump,* No. 25 Civ. 1093 (JE), 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *dos Santos v. Noem,* No. 25 Civ. 12052 (JEK), 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rocha Rosado v. Figueroa,* No. 25 Civ. 2157 (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Gomes v. Hyde,* No. 25 Civ. 11571 (JEK), 2025 WL 1869299 (D. Mass. Jul. 7, 2025))); *see also Echevarria v. Bondi,* No. 25 Civ. 3252 (DWL), 2025 WL 2821282, at *4 (D. Ariz. Oct. 3, 2025) (relying on some of the same cases as Hyppolite, while also citing *Hasan v. Crawford,* 25 Civ. 1408 (LMB), 2025 WL 2682255 at *9 (E.D. Va. Sep. 19, 2025); *Rodriguez v. Bostock,* 779 F. Supp. 3d 1239, 1261 (W.D. Wash. 2025); and *Vazquez v. Feeley,* No. 25 Civ. 1542 (RFB), 2025 WL 2676082, at *16 (D. Nev. Sep. 17, 2025)).

55.    The Government's new mandatory detention theory is also inconsistent with its own behavior over the past three decades. *See, e.g.*, *Chogllo Chafla v. Scott*, No. 25 Civ. 437 (SDN), 2025 WL 2688541, at *8 (D. Me. Sept. 22, 2025) ("The BIA's decision in *Yajure Hurtado* also is at odds with decades of DHS's own practices, which the opinion acknowledges.").

56.    **In this Eastern, District of New York, federal judges have held that § 1226 governs the detention of aliens who are already in the United States** and that § 1225's detention

13

mandate applies only to noncitizens 'seeking admission.'" (*See Yin v. Maldonado*, No. 26-CV-0103 (PKC), 2026 WL ___ (E.D.N.Y. Feb. 4, 2026), "A non-citizen who is already in the country pending the outcome of removal proceedings is not 'seeking admission,' and therefore is not subject to mandatory detention under § 1225(b)(2)(A).") (*See also, Ye v. Maldonado,* 2025 WL 18200918, at 5 (E.D.N.Y. Dec. 8, 2025), "Section 1226(a) provides that an alien may be arrested and detained pending a decision on removal. However, immigration authorities may 'release' the non-citizen on bond or conditional parole."

57.     Moreover, Petitioner qualifies under the class action case in *Maldonado Bautista v. Santacruz,* No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at 9 (C.D. Cal. Nov. 20, 2025) ("Individuals who have not been inspected and authorized by an immigration officer lack the trait to be categorized as 'applicant for admission'…). The court in *Maldonado,* certified a nationwide bond-eligible class defined to include: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id.*

> **D.     ICE LACKED AUTHORITY TO ARREST PETITIONER BECAUSE THE NTA WAS NOT ISSUED AT THE TIME OF THE ARREST, NOR WAS A WARRANT SERVED UPON PETITIONER**

58.     ICE's authority to arrest a noncitizen for discretionary detention under INA § 236(a), 8 U.S.C. § 1226(a), is constrained by its own regulations. 8 C.F.R. § 1236.1(b) provides that "[a]t the time of issuance of the notice to appear, or at any time thereafter … the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest." (emphasis added).

59.    Here, upon information and belief (Petitioner's sister) ICE did not serve the NTA until at the time of Petitioner's arrest, as required by 8 C.F.R. § 1236.1(b).

60.    That is the same fatal defect addressed in *Gopie v. Lyons,* where the court granted habeas relief because ICE arrested the petitioner under an I-200 warrant before the NTA was issued, holding that "when ICE arrested [petitioner] they had no authority to do so" where the NTA followed later.

61.    Because ICE did not issue and serve the NTA at the time of arrest or before arrest, ICE lacked regulatory authority to arrest Petitioner under § 1236.1(b). The detention is therefore unlawful ab initio and the writ should be granted.

62.    **Lastly,** the INA provides that "[o]*n a warrant issued by the Attorney General*, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Thus, "the issuance of a warrant is a 'necessary condition' to justify discretionary detention under the statute." *Astudillo v. Hyde*, No. 25 Civ. 551 (JJM), 2025 WL 3035083, at *4 (D.R.I. Oct. 30, 2025) (quoting *Chogllo Chafla v. Scott*, No. 25 Civ. 438 (SDN), 2025 WL 2688541, at *11 (D. Me. Sep. 22, 2025)).

63.    "Because the Government failed to obtain a warrant as required by statute, [Petitioner] may not be detained and must be immediately released." *Id.*; *accord Chiliquinga Yumbillo v. Stamper*, No. 25 Civ. 479 (SDN), 2025 WL 2783642, at *5 (D. Me. Sep. 30, 2025) (quoting *Chogllo Chafla*, *supra*); *J.A.C.P. v. Wofford*, No. 25 Civ. 1354 (KES), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025) (same).

64.    Mr. Luis Alejandro Tixi Tocachi's detention was therefore unlawful from its inception and cannot be justified by any post-hoc filing of a warrant or NTA.

15

## FIRST CLAIM FOR RELIEF
### STATUTORY AND REGULATORY VIOLATIONS

65.    Petitioner hereby repeats and realleges all preceding allegations in the instant Petition as if fully set forth herein.

66.    In our case, as detailed *supra*, upon information and belief, ICE did not issue Petitioner a NTA prior to his arrest. Moreover, as detailed *supra,* ICE failed to serve Petitioner a Warrant at the time of the arrest. Mr. Luis Alejandro Tixi Tocachi's detention was therefore unlawful from its inception and cannot be justified by any post-hoc issuance of a NTA and Warrant.

## SECOND CLAIM FOR RELIEF
### VIOLATION OF PROCEDURAL DUE PROCESS

67.    Petitioner hereby repeats and realleges all preceding allegations in the instant Petition as if fully set forth herein.

68.    Applying the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976), and in *Velasco Lopez v. Decker,* 978 F.3d 842, 851 (2d Cir. 2020), Petitioner's has been deprived of his right to procedural due process, and he is therefore entitled to immediate release.

69.    In particular, here, **no individualized determination regarding the factors, such as his high flight risk or dangerousness occurred** contemporaneously or before ICE arrested Mr. Luis Alejandro Tixi Tocachi, on July 25, 2021. In fact no process **at all** was conducted prior to Petitioner's detention.

## THIRD CLAIM FOR RELIEF
### VIOLATION OF  SUBSTANTIVE DUE PROCESS

70.    Petitioner hereby repeats and realleges all preceding allegations in the instant Petition as if fully set forth herein.

16

71.     The Due Process Clause of the Fifth Amendment protects the substantive right of all persons in the United States, including noncitizens, to be free from unjustified deprivations of physical liberty. U.S. CONST. amend. V; see generally *Reno v. Flores,* 507 U.S. 292 (1993).

72.     "[G]overnment detention violates the [Due Process Clause] unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas,* 533 U.S. at 690 (quotation marks and citations omitted).

### FOURTH CLAIM FOR RELIEF
VIOLATION OF SECTION 236(a) OF THE INA, 8 U.S.C. § 1226(a)

73.     Petitioner hereby repeats and realleges all preceding allegations in the instant Petition as if fully set forth herein.

74.     The Government appears to take the position that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). Because such a reading of the statute "(1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice," *Lepe*, 2025 WL 2716910, at *4, the Court should reject it, as a chorus of District Judges throughout the Nation has done, *cf. Buenrostro-Mendez*, 2025 WL 2886346, at *3 ("The court need not repeat the 'well-reasoned analyses' contained in these opinions and instead simply notes its agreement." (quoting *Chogllo Chafla*, 2025 WL 2688541, at *5)).

75.     **In fact in this Court, the Eastern District of New York, federal judges have held that § 1226 governs the detention of aliens who are already in the United States** and that § 1225's detention mandate applies only to noncitizens 'seeking admission.'" (*See O.F.B. v.*

17

*Maldonado,* No. 1:25-cv-06032 (E.D.N.Y. Nov. 25, 2025), "[u]nder § 1226(a), detention is discretionary. If detained, the noncitizen may request a bond hearing before an immigration judge, where he may secure his release if he demonstrates that he poses no flight risk and no danger." ) (*see also*, *Rodriguez-Acurio v. Almodovar,* No. 2:25-cv-6065 (E.D.N.Y. 2025) "Section 1226(a) provides three options: the Attorney General may continue to detain the arrested alien, may release the alien on bond, or may release the alien on conditional parole. Thus, detention under § 1226(a) is discretionary and expressly contemplates release."

76.    Moreover, Petitioner qualifies under the class action case. As discussed *supra,* the court in *Maldonado,* certified a nationwide bond-eligible class.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that the Court:

(1) Assume jurisdiction over his petition;

(2) Enjoin Respondents from transferring Petitioner outside of the United States;

(3) Direct Respondents to show cause within three days why the Petition should not be granted;

(4) Order Petitioner's immediate release from custody pending resolution of this matter, or in the alternative, Order Respondents to provide Petitioner a bond hearing under 8 U.S.C. § 1226(a) within seven days, with the Government bearing the burden of proof.";

(5) Declare Petitioner's ongoing detention to be violative of the Due Process Clause of the Fifth Amendment;

(6) Issue a writ of habeas corpus directing Respondents to release Petitioner;

(7) Award reasonable attorney's fees and costs to Petitioner; and

(8) Provide such other relief as the Court deems just and proper.

Dated:  February  27, 2026
        Kew Gardens, Queens, 11415


                                        /s/ Reuben S. Kerben, Esq.
                                        KERBEN LAW FIRM, P.C.
                                        80-02 Kew Gardens Rd, Ste 307
                                        Kew Gardens, NY 11415
                                        Tel: (718) 255-8585
                                        Email: law@klf.nyc


### VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Mr. Luis Alejandro Tixi Tocachi, and submit this verification on his behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.


Dated this 27th day of February, 2026

                                        /s/ Reuben S. Kerben, Esq.


19